UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>LEE MATHIS,<br><br>                              Defendant. | Case No.:  15cr2822-CAB<br><br>**ORDER REGARDING MOTION TO DISMISS DUE TO INCOMPETENCY OF DEFENDANT TO ASSIST COUNSEL AND TESTIFY** |

On November 5, 2015, a federal grand jury returned an indictment that alleges defendant Lee Mathis and others engaged in a $22 million kickback and bribery scheme through which co-conspirators paid bribes and kickbacks to physicians to refer California Workers' Compensation patients to defendant Foremost Shockwave Solutions ("Foremost"). [Doc No. 1.]  The 9-count indictment charges Mr. Mathis and others with conspiracy in violation of 18 U.S.C. § 371, honest services mail fraud in violation of 18 U.S.C. §§ 1341 and 1346, violation of the Travel Act (18 U.S.C. § 1952), aiding and abetting and criminal forfeiture.    Before the Court now is Mr. Mathis' motion to dismiss based on his asserted lack of competency to assist counsel and inability to competently testify.

/ / / / /

/ / / / /

1

## I. Procedural History

Mr. Mathis was arraigned on the indictment and released on bond on November 12, 2015. At the initial motion hearing on December 14, 2015, counsel jointly requested a continuance to March 25, 2016 to allow for the production and review of voluminous discovery. [Doc. No. 35.] At the March hearing, defense counsel requested the case be declared complex and the motion date be continued to August 18, 2016, which the Court granted. [Doc. Nos. 59, 61.] No motions were filed. Instead on August 15, 2016, counsel filed a joint request to further continue the motion date to December 16, 2016 due to discovery issues and personal matters involving defense counsel. [Doc. No. 77.] Again, no motions were filed. On December 12, 2016, counsel again filed another joint request to continue the motion date to March 24, 2017. [Doc. No. 84.]

No motions were filed for the March hearing. A co-defendant however requested a change of counsel. To accommodate new counsel, the Court set a status conference for May 5, 2017. [Doc. No. 89.] The parties then filed joint motions to continue the May status to June 2, 2017. [Doc. Nos. 102, 105.] At the June status hearing the Court reset the motion hearing date for August 17, 2017. [Doc. No. 116.] Mr. Mathis filed a motion to dismiss the indictment on July 28, 2017. [Doc. No. 140.][1]

In support of the motion to dismiss, Mr. Mathis submitted a six-page declaration. [Doc. No. 140-1.] It recounts, in detail, conversations and events from 2012 and 2013 and includes Mr. Mathis' own legal analysis[2] of specific transactions. There is no indication in the declaration that Mr. Mathis could not recall or was confused about events he described, or any indication in defense counsel's briefing that Mr. Mathis' recollections might be unreliable or incompetent.

---

[1] By this time, two co-defendants entered guilty pleas and were sentenced [Doc. Nos.111, 112] and the third co-defendant entered a guilty plea [Doc. No. 126]. Mr. Mathis and the entity Foremost are the only remaining defendants in this matter.

[2] Mr. Mathis is a graduate of Loyola Law School, a member of the California Bar and practiced Worker's Compensation Law.

During July and August, 2017, the magistrate judge also held hearings regarding appointment of counsel for co-defendant Foremost. [Doc. Nos. 127, 133, 148, 149.] Mr. Mathis provided the court with a financial affidavit on behalf of Foremost, signed under penalty of perjury. He was appointed by the magistrate judge as the corporate representative for Foremost and accepted personal responsibility for Foremost's compliance with the court's orders and payments of fees and expenses to counsel. There was no indication during these proceedings that Mr. Mathis did not have the capacity to maintain attention or understand the legal proceedings. Nor did his counsel hesitate to have him make financial and other representations to the court.

Also from late July, 2017, to November, 2017, Mr. Mathis was involved in proceedings before the magistrate judge regarding allegations he violated his conditions of pretrial release. [Doc. Nos. 132, 137, 144, 147, 160 and 184.] In connection with those proceedings, Mr. Mathis appeared in court and made representations to the magistrate judge about the allegations of misconduct personally and through his counsel. He executed both an appearance bond secured by real property and the related real property title documents to support the bond. Mr. Mathis participated in these hearings and the preparation and execution of legal documents without any indication his competency to understand was in any way limited. His counsel appeared to have confidence in his ability to help prepare for these proceedings.

The hearing on Mr. Mathis' motion to dismiss was continued from August 17, 2017 to ultimately December 14, 2017, to accommodate Foremost's newly appointed counsel. [Doc Nos. 152, 154, 168, 170.] The hearing was finally held on December 14, 2017. The motion was denied, and trial was set for August 6, 2018, with a status conference was set for April 6, 2018 to address any remaining discovery and set pre-trial motions. [Doc. No. 187.]

On April 2, 2018, defense counsel requested a continuance of the status conference to April 19, 2018 to allow in part for the completion of a mental competency evaluation of Mr. Mathis. [Doc No. 192.] On April 6, 2018, defense counsel submitted a status

report stating defense could not be ready for the August trial date because of the volume of discovery and technical complications with access to electronic documents. Also for the first time, defense counsel represented that Mr. Mathis was unable to assist counsel in preparing his defense. [Doc. No. 194.]

In March, counsel had Mr. Mathis evaluated by Dr. Veronica Thomas, and Dr. Thomas opined that Mr. Mathis was not competent to stand trial and meaningfully assist in his own defense, including intelligently testifying in front of a jury. [Doc. No. 194-1 (sealed).] Defense counsel requested the court schedule a mental competency hearing.

On April 19, 2018, the Court held a status hearing on the defendant's competency. Defense counsel represented that Dr. Thomas was conducting additional evaluations and the government requested the opportunity to have the defendant evaluated as well. [Doc. No. 197.] The Court set a status hearing for May 31, 2018 and, based on the estimated times for the completion of the experts' evaluations, set the competency hearing for August 16, 2018, vacating the trial date. [Doc. No. 203.]

Delays in finalizing the doctors' reports, and scheduling conflicts resulted in the hearing being continued twice. [Doc. Nos. 220, 227.] The hearing was ultimately held on November 8, 2018. [Doc. No.234.] Following the hearing, the Court also asked for additional briefing, completed December 14, 2018, specifically addressing defendant's request to dismiss based on the assertion Mr. Mathis is not competent to testify on his own behalf. [Doc. Nos. 238, 241.]

**II.     Legal Standard**

A defendant is competent to stand trial if he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "has a rational as well as factual understanding of the proceedings against him." *U.S. v. Gastelum-Almeida*, 298 F.3d 1167, 1171 (9th Cir. 2002), citing *Dusky v. U.S.*, 363 U.S. 402, 402 (1960) (per curiam). "Whether a defendant is capable of understanding the proceedings and assisting counsel is dependent upon evidence of the defendant's

irrational behavior, his demeanor in court, and any prior medical opinions on his competence." *Miles v. Stainer*, 108 F.3d 1109, 1112 (9th Cir. 1997).

The Government has the burden of demonstrating by a preponderance of the evidence that the defendant is competent to stand trial. *U.S. v. Frank*, 956 F2d 872, 875 (9th Cir. 1991). The test that must be applied in determining competency to stand trial is set forth in *Dusky:*

> [I]t is not enough for the district judge to find that "the defendant [is] oriented to time and place and [has] some recollection of events," but that the "test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him.

*Dusky*, 362 U.S. 402-03.

If there is "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense," the trial court shall order a hearing to determine the mental competency of the defendant. 18 U.S.C. § 4241 (a).

The defendant in this case does not assert that he is "unable to understand the nature and consequences of the proceedings against him." His counsel however contends that he does not have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and therefore cannot assist in his defense. Further defense counsel contends Mr. Mathis is not competent to testify on his own behalf due to his memory impairment.

### III. The Medical Evaluations and Competency Hearing

#### A. Initial Evaluation by Dr. Thomas

Dr. Thomas, a licensed psychologist with an independent practice in clinical and forensic psychology, conducted an initial examination of the defendant [Doc. No. 194-1 (sealed)] at the request of defense counsel based on counsel's concerns that Mr. Mathis was demonstrating an inability to focus on case preparation and provide reliable

information in his defense. Dr. Thomas interviewed the defendant with his significant other, Ms. Tammy Shaw, on March 17 and 31, 2018.

In her report dated April 4, 2018, Dr. Thomas found the 73-year-old defendant to be alert, oriented as to person, place, time and date. She described Mr. Mathis as personable, quite intelligent and cooperative. He understood the charges against him, including that he is charged with 57 overt acts. [*Id*., at 2.]

Dr. Thomas conducted a series of cognitive tests on the defendant. Mr. Mathis tested at an IQ of 120, performed "very well" on a complicated series of cognitive tests that "requires careful evaluation of data and changing set and concentrating," although he showed "moderate impairment in his delayed memory." He demonstrated good mental status and no indication of bizarre thinking or impaired judgment. "He was not found to be suggestible and could not be pressured into remembering something completely unrelated to a story." [*Id*., at 5-6.]

During the interview Ms. Shaw represented to Dr. Thomas that for more than a year, Mr. Mathis had become increasingly forgetful around their home, to the point she reported that "[s]he does not leave him alone all day because she knows he will wander off, get lost or burn the house down." [*Id*., at 3.] During the interview she continually interrupted Mr. Mathis to correct him regarding facts and details, and Mr. Mathis became frustrated at being told he was wrong or being told he was misremembering facts. [*Id*., at 3-4.] Ms. Shaw reported that when she reviews the case discovery with Mr. Mathis he is "unable to maintain his concentration, becomes angry, frustrated, irritable, overwhelmed, forgets what they are doing and what they are listening to, cannot take notes, reference between recordings and distinguish between notated recordings and conversations." [*Id*., at 3.]

Based on Ms. Shaw's reports, Dr. Thomas concluded that Mr. Mathis has a functional impairment that interferes with his daily functioning and requires the assistance of his significant other to monitor his behavior and actions for his safety. Dr. Thomas opined that "[t]here are safety issues in the home with appliances and the

likelihood that he could become lost in public is real." Dr. Thomas also remarked that the issues regarding the legal case have been overwhelming and stressful for Mr. Mathis and he becomes angry and confused when reviewing discovery and she opined that Mr. Mathis "appears to engage in confabulation, a result of functional memory impairment." [*Id.*, at 6.]

Dr. Thomas described "confabulation" as "verbally fill[ing] in the blanks or empty spaces automatically when cognitively tweaked or stimulated." [*Id.*] When a patient confabulates, he replaces memory gaps with imaginary information and communicates that falsely constructed answer or information genuinely believing it to be true. She concluded that Mr. Mathis is not able to listen to witness testimony and compare it to his actual real experience and challenge that testimony without engaging in confabulation. She therefore opined that Mr. Mathis is presently unable to assist in his defense. [*Id.*, at 7.]

### B. Final Report by Dr. Thomas

For her final report, dated July 18, 2018, Dr. Thomas interview Mr. Mathis four additional times. [Doc. No. 215 (sealed).] She noted that defense counsel informed her that Mr. Mathis was becoming increasingly irritable and aggressive when they discussed the pending criminal case. He reportedly contends that his counsel does not understand the simplicity of the case, and defense counsel expressed concern Mr. Mathis cannot understand or comprehend the magnitude of the issues involved in his case. Counsel also expressed concern that Mr. Mathis did not have the ability to remain in a courtroom for proceedings and remain mentally focused due to his mental impairments and limited emotional capacity.

Dr. Thomas administered additional cognitive tests and reported that "Mr. Mathis' present neuropsychological status indicates moderate impairment in delayed memory." He performed well on timed tests and demonstrated he was not "likely to yield to coercive suggestibility." He had excellent recollection of his childhood and early family memory. His orientation in time and place for the present was good, and his memory of

facts for the last ten years and historical facts were very good to excellent. Dr. Thomas, however, found based on tests and her observations that Mr. Mathis' orientation in time and place for the proceeding week was incorrect. Dr. Thomas also considered additional reports from Ms. Shaw that the defendant was experiencing continuing and progressive memory issues, general confusion and emotional outbursts.

Dr. Thomas concluded that Mr. Mathis has a memory impairment to a degree that he cannot hold information and recall it for later use, such that he cannot meaningfully interact with counsel. His critical thinking skills and judgment are affected by emotional factors, he becomes irritable and agitated by his inability to communicate effectively which leads to verbal aggression and fatigue. His recollection of events and interactions with co-defendants are often incorrect or false, although he believes them to be correct, which Dr. Thomas again describes as "confabulation," a "highly unusual" impairment.[3] When confronted with evidence contrary to his recollections, Mr. Mathis rejects the contrary account and frequently becomes angry when challenged.

Dr. Thomas stated that Mr. Mathis suffers from neurocognitive and emotional/behavioral impairments such that he would be unable to listen to witnesses at trial and (1) stay focused on their testimony, (2) compare and contrast their testimony with his past experience and reliable recollections, (3) observe the testimony of others for inconsistencies with his past experiences and recollections and (4) correct the inconsistencies of others reliably. She further stated he has a short attention span, is emotionally labile and may not be able to contain his emotions in the courtroom or sit still.

It is Dr. Thomas' professional opinion that although Mr. Mathis understands the charges and their potential consequences, he is not competent to assist counsel rationally

---

[3] At the hearing, Dr. Thomas testified that confabulation is very rare. She had never diagnosed anyone previously with confabulation and she considered this case "an amazing find."

in his defense due to a chronic progressive neurocognitive impairment of memory and mood.

### C. The Report of Matthew F. Carroll, M.D.

The Government engaged Dr. Matthew Carroll to evaluate Mr. Mathis' competency to stand trial, pursuant to 18 U.S.C. § 4241 (b). Dr. Carroll is board certified in general psychiatry and forensic psychiatry. Dr. Carroll reviewed court records, medical records, Dr. Thomas' reports and interviewed Mr. Mathis on two occasions. Dr. Carroll submitted a report dated September 18, 2018. [Doc No. 232, Ex. A (sealed).]

Dr. Carroll found Mr. Mathis to be cooperative, logical and goal-directed, with good insight and judgment. He did not display any cognitive deficits. [*Id.*, at 21.] An MRI taken on April 5, 2018 was unremarkable for severe cognitive problems. A geropsychiatry consult from April 19, 2018, resulted in a diagnosis of a mild neurocognitive disorder and unspecific depressive disorder, for which Mr. Mathis was advised to decrease his alcohol use, exercise and maintain a healthy lifestyle.[4] Records indicated that Mr. Mathis was administered the MMPI on May 24, 2018 and was clinically within normal limits with no indications of any significant mental health problems. [Doc. No. 232, Ex. A, at 10-11.]

In his interviews with Dr. Carroll, Mr. Mathis was able to provide a detailed personal and professional history. They discussed the pending charges and Mr. Mathis provided a summary of the Workers' Compensation system, his role in the system and he discussed the Government's case. Mr. Mathis demonstrated a reasonable appreciation of the charges against him. He described "his side of the story in a coherent and logical manner." [*Id.*, at 15-20, 23.]

---

[4] The concerns reported by Ms. Shaw a month earlier to Dr. Thomas for legal purposes, specifically that Mr. Mathis' progressive memory issues posed a potential danger to himself and others, such as a real likelihood he might get lost in public or burn the house down, were not related to the consulting psychiatrist assessing Mr. Mathis for treatment purposes. [Competency Hrg., Ex. 2.]

Dr. Carroll found that Mr. Mathis may have some age-related memory decline that could possibly be the early start of Alzheimer's disease, however his symptoms are currently mild.  In contrast to Dr. Thomas' notation that Mr. Mathis faces "safety issues in the home with appliances and the likelihood that he would become lost in public is real," Dr. Carroll noted that Mr. Mathis fully functions in the community and drives and travels to new places alone.  [*Id*., at 21-22.]

Dr. Carroll found that although Mr. Mathis may easily become upset or angry about his circumstances, there was no indication that Mr. Mathis is incapable of refraining from an outburst in court.  Mr. Mathis had no difficulty participating in either the initial three-hour interview or the subsequent one-and-a-half hour interview.  He demonstrated no mental illness that would compromise his ability to discuss his case with his attorney in a reasonable manner.  Nor did Dr. Carroll find that Mr. Mathis was different from other defendants of his age and intelligence level, in terms of his ability to tolerate the stress of trial, noting that many individuals in their 70s become more tired in the afternoon and their attention wanes.  [*Id*., at 23-25.]

Dr. Carroll did not consider the defendant's inability to recall specific conversations or events that occurred six years ago as unusual.  "It is reasonable for most individuals to not remember specific conversations that they had from six years ago, especially considering that there are multiple issues in this case."  [*Id*., at 24.]  Dr. Carroll disagreed with Dr. Thomas' opinion that Mr. Mathis is demonstrating confabulation.  He concluded that although Mr. Mathis may misremember details from events and conversations of six years ago, Mr. Mathis acknowledged that despite being initially obstinate that he had things correct, he admitted his recollections were wrong when he looked at the evidence and transcripts of prior conversations.  Dr. Carroll found that Mr. Mathis has the ability to address whether his memory of conversations is correct or not. [*Id*., at 24-25.]

Dr. Carroll distinguished Mr. Mathis' issues with incorrect memories of events, which he stated is common especially regarding details, from confabulation which

10

15cr2822-CAB

involves individuals with brain damage who make up stories that are clearly untrue. Dr. Carroll found no indication that Mr. Mathis suffers from a mental illness that would not allow him to be able to listen to recorded conversations and review transcripts and acknowledge that his memory of the event may be incorrect. [*Id*.]

It is Dr. Carroll's professional opinion, that Mr. Mathis has the capacity to comprehend instructions, evaluate legal advice regarding decisions, relate to his counsel in a reasonable manner, realistically challenge prosecution witnesses, review the evidence and determine if his memories are correct or not, and he has the capacity to testify relevantly. In summary, it is Dr. Carroll's opinion that the defendant understands the nature and consequences of the proceedings against him and can assist properly in his defense and testify on his own behalf. [*Id*., at 25.]

### D. The Competency Hearing

Mr. Mathis attended the competency hearing, although he did not testify. The Court observed no indication that Mr. Mathis was unable to follow the testimony of others. He was attentive, quiet and showed no signs of emotional or behavioral impairments resulting in the disruptive behavior as predicted by Dr. Thomas. The Court also notes that during the pendency of this matter, Mr. Mathis has made multiple appearance in court and has never been disruptive in any manner. Even when charged with a violation of his pretrial release and remanded to custody by the magistrate judge, Mr. Mathis exhibited no inappropriate behavior.

Dr. Thomas testified in accordance with her reports. Much of Dr. Thomas' opinion however is based on information provided by Ms. Shaw regarding Mr. Mathis's impairments related to their home life. The Court however found these anecdotal accounts to be exaggerated and unconvincing.

In March 2018, for example, Ms. Shaw reported to Dr. Thomas that for over a year Mr. Mathis was having such significant memory issues that she could not leave him home alone all day or allow him to drive on his own outside their immediate vicinity stating "she knows he will wander off, get lost or burn the house down." Yet on May 14,

2018, Mr. Mathis requested permission to travel from California to Kansas for his grandson's graduation. Defense counsel represented to the Court that "[a]t all relevant times, Mathis would be accompanied by his wife Tammy Shaw who would assure he safely travels to and from California to Kansas and back," but that did not happen.[5] [Doc. No. 198, at ¶ 1.] Mr. Mathis traveled alone, and stayed by himself in a hotel. Ms. Shaw testified she dropped him off at the airport in California and family picked him up at the airport in Kansas, however she did not to accompany him. Counsel, Ms. Shaw and Mr. Mathis all apparently felt him capable of making this trip and staying in an unfamiliar place independently. The Court finds the representations about Mr. Mathis' mental limitations made by Ms. Shaw that support much of Dr. Thomas' opinion questionable and unpersuasive.

Dr. Thomas also relied on the reports of Ms. Shaw and defense counsel in March and April of 2018, that for more than a year Mr. Mathis displayed an inability to remember details of conversations or events that occurred six or so years prior, and that he became insistent that his recollections were correct even when confronted with evidence to the contrary. These reports form the primary basis of Dr. Thomas' confabulation diagnosis and her opinion that Mr. Mathis is not competent to assist his counsel.

The Court again notes that throughout this litigation since 2015, Mr. Mathis appeared in court, signed documents under oath and in July 2017 provided a detailed declaration of events that occurred years earlier. During this same time his counsel now represent he has demonstrated increasing and limiting mental and emotional impairments that make him incompetent. Mr. Mathis' behavior and participation in this litigation does

---

[5] This "assurance" by counsel that Mr. Mathis would not be unaccompanied on this trip was made specifically because of the position advocated by defense counsel that Mr. Mathis is incompetent to stand trial and was undergoing evaluations to establish his inability to remember and function independently.

12

not support the representations that he is incapable of reasonably assisting counsel in the preparation of his defense.

Further in his interviews with Dr. Carroll, Mr. Mathis acknowledged his memories may be flawed and accepted that there is evidence that contradicts his recollections, demonstrating that although Mr. Mathis may initially be obstinate about his recollections, he is not unreasonable when confronted with facts to the contrary. Failure to recall all relevant details, or misremembering facts, or experiencing frustration and anger because one cannot remember everything with the clarity one once had as a youngster, does not render Mr. Mathis incompetent to review discovery and reasonably assist his counsel in his defense.

**IV.     Mr. Mathis' Competency to Testify on his own Behalf**

In addition to the contention that Mr. Mathis is not competent to reasonably assist his counsel in preparation of his defense, counsel also contends the defendant's mental and emotional impairments render his incompetent to testify on his own behalf warranting dismissal of the criminal case. Defense counsel postulates that any testimony by Mr. Mathis about past events related to the charges would be a fabrication due to his memory impairments, although he would believe it to be the truth. Consequently, counsel argues he is incompetent to testify, which is his constitutional right, so the Court should dismiss the case.

Federal Rule of Evidence 601 provides, "Every person is competent to be a witness unless these rules provide otherwise." A witness must have personal knowledge of the matter (Fed. R. Evid. 602) and give an oath or affirmation to testify truthfully (Fed. R. Evid. 603). No mental qualifications for testifying as a witness are specified in the Federal Rules of Evidence. Few witnesses are disqualified on the ground of mental capacity. See Fed. R. Evid. 601, Advisory Committee Notes, 1972 Proposed Rules. The competency of a witness is determined by an assessment of "minimum credibility." *Barto v. Armstrong World Indus., Inc.,* 923 F.Supp. 1442, 1445 (D.N.M. 1996). That

standard is satisfied if "a reasonable juror could put any credence in the witness's testimony." *Id.*

Based on Dr. Thomas' opinion that Mr. Mathis is prone to confabulation, that he believes false recollections or fabricated memories to be true and cannot be persuaded otherwise, counsel argues he cannot testify truthfully. The record however, and Mr. Mathis' participation to date in this litigation, does not support Dr. Thomas' confabulation diagnosis. Mr. Mathis has mild to moderate age-related memory impairment. He has some difficulty recalling specific facts and events related to the charges against him. He gets frustrated and sometimes angry when confronted with contrary evidence. He acknowledged to Dr. Carroll however that when evidence he has reviewed is at times inconsistent with his memories he has the ability to reevaluate his recall against the other evidence.

There is no evidence Mr. Mathis is delusional or incoherent. He has never displayed an emotional outburst or mental confusion in his many court appearances. His memory for many events and details is described as good to excellent. Although his recollections regarding the events that form the basis of the charges against him may not be perfect, he was able to provide a logical and coherent explanation of the criminal case to Dr. Carroll. The Court finds Mr. Mathis capable of testifying in a meaningful fashion.

## V. Conclusion

The Court finds that Mr. Mathis has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and can assist in his defense. The Court further finds Mr. Mathis competent to testify on his own behalf. The motion to dismiss is **DENIED.**

Dated: March 19, 2019

_____
Hon. Cathy Ann Bencivengo
United States District Judge